UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| BRANDON BARBOUR,<br><br>             Plaintiff,<br><br>v.<br><br>OFFICER BANDA; and ROBERT TROMBLY,<br><br>             Defendants. | **MEMORANDUM DECISION AND ORDER PERMITTING AMENDED COMPLAINT AND TEMPORARILY GRANTING MOTION TO WAIVE FILING FEE (DOC. NO. 2)**<br><br>Case No. 2:25-cv-00167<br><br>Magistrate Judge Daphne A. Oberg |

      Proceeding without an attorney and without paying the filing fee, Brandon Barbour filed this action against police officer Banda[1] and Provo City prosecutor Robert Trombly, alleging various civil rights violations.[2] The court temporarily granted Mr. Barbour's motion to waive the filing fee and stayed the case for screening.[3] Mr. Barbour's complaint fails to state a plausible claim for relief because he does not establish municipal liability for his official-capacity claims, his individual-capacity claims against Mr. Trombly are barred by prosecutorial immunity, and his individual-capacity claims against Officer Banda lack supporting factual allegations. However, as explained below, Mr. Barbour is permitted to file an amended complaint by July 2, 2025. The

---

[1] Mr. Barbour does not provide a first name for Officer Banda.

[2] (*See* Compl., Doc. No. 1; Mot. to Waive Filing Fee, Doc. No. 2.)

[3] (*See* Order Temp. Granting Mot. to Waive Filing Fee and Notice of Screening Under 28 U.S.C. § 1915, Doc. No. 5.)

court again temporarily grants Mr. Barbour's motion to waive the filing fee[4] pending screening of the amended complaint, if any is filed.

## LEGAL STANDARDS

When a court authorizes a party to proceed without paying a filing fee, the court must dismiss the case if it determines the complaint "fails to state a claim on which relief may be granted" or "seeks monetary relief against a defendant who is immune from such relief."[5] In determining whether a complaint fails to state a claim for relief under § 1915, the court uses the standard for analyzing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[6] To avoid dismissal under this rule, a complaint must allege "enough facts to state a claim to relief that is plausible on its face."[7] The court accepts well-pleaded factual allegations as true and views the allegations in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor.[8] But a court need not accept a plaintiff's conclusory allegations as true.[9] "[A] plaintiff must offer specific factual allegations to

---

[4] (Doc. No. 2.)

[5] 28 U.S.C. § 1915(e)(2)(B)(ii)–(iii).

[6] *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007).

[7] *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

[8] *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013).

[9] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

support each claim,"[10] and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[11]

Because Mr. Barbour proceeds without an attorney (pro se), his filings are liberally construed and held "to a less stringent standard than formal pleadings drafted by lawyers."[12]  Still, pro se plaintiffs must "follow the same rules of procedure that govern other litigants."[13]  For instance, pro se plaintiffs still have "the burden of alleging sufficient facts on which a recognized legal claim could be based."[14]  While courts must make some allowances for a pro se plaintiff's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements,"[15] courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[16]

---

[10] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

[12] *Hall*, 935 F.2d at 1110.

[13] *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citation omitted).

[14] *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir. 2008) (internal quotation marks omitted).

[15] *Hall*, 935 F.2d at 1110.

[16] *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (citation omitted).

## BACKGROUND

Using a form civil rights complaint, Mr. Barbour brought this action for money damages under 28 U.S.C. § 1983, alleging Officer Banda and Mr. Trombly violated his civil rights in various ways.[17] Mr. Barbour checked boxes on the complaint indicating he is suing Officer Banda and Mr. Trombly in their individual and official capacities.[18] Mr. Barbour's allegations are as follows.

In March 2024, Officer Banda followed Mr. Barbour's car for "approximately 10 min[utes]" before pulling him over and citing him for a "traffic control signal violation."[19] During an ensuing court proceeding,[20] Mr. Trombly (the prosecutor) offered Mr. Barbour a plea bargain, which Mr. Barbour declined.[21] Mr. Trombly "stated to the judge afterwards [that] he needs to look over the discovery, [and the] case was set for trial."[22] Mr. Barbour contends "[t]he discovery did not have any actual proof, or evidence, or fact

---

[17] (*See generally* Compl., Doc. No. 1.)

[18] (*Id.* at 2.)

[19] (*Id.*)

[20] Mr. Barbour does not explain whether the court proceeding pertained to the traffic citation or another offense.

[21] (Compl., Doc. No. 1 at 4.)

[22] (*Id.*)

to support [the] accusations."[23]  The case was later "dismissed by [the] prosecution based on video footage [Mr. Barbour] submitted to the court."[24]

On the section of the complaint form inviting Mr. Barbour to identify which of his federal rights were violated, Mr. Barbour wrote: "Probable cause, search and seizures, malicious prosecution[,] due process violations, equal protection, [and] intentional misconduct."[25]  Elsewhere in his complaint, Mr. Barbour alleges Officer Banda violated his "Fourth Amendment protection against unreasonable searches and seizures" and "the Fourteenth Amendment's guarantee of due process and equal protection" by "tracking and following [him] without cause, falsifying details in a police report, and failing to provide evidence to the court."[26]  Mr. Barbour also alleges Mr. Trombly violated the Fourteenth Amendment by "offering a plea deal without reviewing the evidence, admitting in court to not having examined the discovery, and ultimately dismissing the case based on evidence submitted by the defendant."[27]  Mr. Barbour seeks $500,000 in "reimbursement for [his] time, [lost] wages, the harm to [his] mental health, the harm to [his] personal/professional character, [and] the lack of professionalism by prosecutor and officer."[28]

---

[23] (*Id.*)

[24] (*Id.*)

[25] (*Id.* at 3.)

[26] (*Id.* at 7.)

[27] (*Id.*)

[28] (*Id.* at 5.)

## ANALYSIS

Mr. Barbour cites 42 U.S.C. § 1983 as the basis for his claims.[29] Section 1983 provides a recovery mechanism for violations of federal rights in certain circumstances.[30] "To establish a cause of action under [§] 1983, a plaintiff must allege (1) deprivation of a federal right by (2) a person acting under color of state law."[31] As explained below, Mr. Barbour fails to state a § 1983 claim. His individual-capacity claims against Mr. Trombly are barred by prosecutorial immunity, his official-capacity claims against Mr. Trombly and Officer Banda fail because he does not establish municipal liability, and his individual-capacity claims against Officer Banda lack supporting factual allegations.

I. Mr. Barbour fails to state a claim against Mr. Trombly.

a. *Individual-capacity claims*

First, to the extent Mr. Barbour is suing Mr. Trombly in his individual capacity, these claims are barred by prosecutorial immunity. "State prosecutors are entitled to absolute immunity against suits brought pursuant to § 1983 for activities intimately associated with the judicial process, such as initiating and pursuing criminal

---

[29] (*See id.* at 3.)

[30] *See* 42 U.S.C. § 1983; *see also Margheim v. Buljko*, 855 F.3d 1077, 1084 (10th Cir. 2017) (describing § 1983 generally).

[31] *Watson v. Kansas City*, 857 F.2d 690, 694 (10th Cir. 1988).

6

prosecutions."[32] This protects prosecutors' "decisions to prosecute, their investigatory or evidence-gathering actions, their evaluation of evidence, their determination of whether probable cause exists, and their determination of what information to show the court."[33] Prosecutors enjoy such immunity "even if it leaves the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty."[34]

As noted above, Mr. Barbour claims Mr. Trombly violated the Fourteenth Amendment by "offering a plea deal without reviewing the evidence, admitting in court to not having examined the discovery, and ultimately dismissing the case based on evidence submitted by the defendant."[35] Because these activities are intimately associated with the judicial process, they are protected by prosecutorial immunity.[36]

---

[32] *Carbajal v. McCann*, 808 F. App'x 620, 631 (10th Cir. 2020) (unpublished) (quoting *Gagan v. Norton*, 35 F.3d 1473, 1475 (10th Cir. 1994)); *see also Blair v. Osborne*, 777 F. App'x 926, 929 (10th Cir. 2019) (unpublished) ("Prosecutorial immunity bars claims for damages against a prosecutor sued in her individual capacity.").

[33] *Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic, Kan.*, 582 F.3d 1155, 1164 (10th Cir. 2009).

[34] *Carbajal*, 808 F. App'x at 631 (internal quotation marks and citation omitted).

[35] (Compl., Doc. No. 1 at 7.)

[36] *See Arnold v. McClain*, 926 F.2d 963, 967 (10th Cir. 1991) (noting plea negotiations are protected by absolute prosecutorial immunity); *Van Deelen v. City of Eudora*, 53 F. Supp. 2d 1223, 1229 (D. Kan. 1999) ("[The prosecutor] is entitled to absolute immunity for his prosecutorial actions in reviewing and evaluating the evidence found in the police offense reports and witness statements, in determining that the evidence was sufficient to support a finding of probable cause, and in deciding to file charges."); *Chacon v. Watson*, No. CIV 03-438, 2004 U.S. Dist. LEXIS 28252, at *21 (D.N.M. May 6, 2004) (unpublished) ("A prosecutor's decision regarding dismissal of charges is

Prosecutorial immunity also bars Mr. Barbour's malicious prosecution claim against Mr. Trombly.[37] In sum, Mr. Barbour's claims against Mr. Trombly in his individual capacity are barred by prosecutorial immunity, based on the conduct alleged in the complaint.

### b. Official-capacity claims

Mr. Barbour's official-capacity claims against Mr. Trombly also fail. Claims against municipal prosecutors in their official capacities are effectively claims against the municipality.[38] "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."[39] "Instead, 'the government as an entity' may only be held liable 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'"[40] "There are three requirements for municipal liability under 42 U.S.C. § 1983: (1) the existence of an official policy or custom; (2) a direct causal link between the policy or custom and the constitutional injury; and (3) that the defendant established the policy with deliberate indifference to an almost inevitable

---

entitled to absolute prosecutorial immunity because it is intimately associated with the judicial phase of the criminal process." (internal quotation marks and citation omitted)).

[37] (*See* Compl., Doc. No. 1 at 3 (listing "malicious prosecution" in the section of the complaint form inviting Mr. Barbour to identify which of his federal rights were violated)); *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976) (holding prosecutors are absolutely immune from malicious prosecution claims).

[38] *See Watson*, 857 F.2d at 695 ("A [§ 1983] suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same.").

[39] *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

[40] *Id.* (quoting *Monell*, 436 U.S. at 694).

constitutional injury."[41]  The "municipal policy or custom" may take one of the following forms:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.[42]

Mr. Barbour fails to allege the existence of an official policy or custom giving rise to a constitutional injury.  His allegations relate solely to the actions of an individual prosecutor; he does not allege these actions resulted from any formal policy, informal custom, or failure to train—or that they were ratified by final policymakers.  Further, he fails to allege any underlying constitutional violation.  Therefore, Mr. Barbour fails to state a claim for municipal liability under § 1983.

II.     Mr. Barbour fails to state a claim against Officer Banda.

Mr. Barbour's official-capacity claims against Officer Banda fail because—as with Mr. Trombly—Mr. Barbour does not allege any official policy or custom gave rise to a constitutional injury.  Mr. Barbour also fails to state an individual-capacity claim against Officer Banda.

---

[41] *Soto v. Bd. of Cnty. Comm'rs of Caddo Cnty.*, 748 F. App'x 790, 793–94 (10th Cir. 2018) (unpublished) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769–70 (10th Cir. 2013)).

[42] *Waller*, 932 F.3d at 1283 (citation omitted).

With regard to his individual-capacity claims, Mr. Barbour contends Officer Banda violated his "Fourth Amendment protection against unreasonable searches and seizures" and "the Fourteenth Amendment's guarantee of due process and equal protection" by "tracking and following [him] without cause, falsifying details in a police report, and failing to provide evidence to the court."[43] Mr. Barbour also wrote "[p]robable cause, search and seizures, malicious prosecution[,] due process violations, equal protection[,] [and] intentional misconduct" in the section of the complaint form inviting him to identify which of his federal rights were violated.[44]

But an officer does not violate the constitution by merely following a car on a public road.[45] And while tracking an individual's car without a warrant may violate the Fourth Amendment in some circumstances,[46] Mr. Barbour's allegation that Officer Banda tracked him without cause is conclusory. Mr. Barbour provides no explanation of how or where Officer Banda tracked him—he simply alleges Officer Banda "track[ed]

---

[43] (Compl., Doc. No. 1 at 7.)

[44] (*See id.* at 3.)

[45] *See Stanton v. Unknown Agent,* 697 F. App'x 586, 588 (10th Cir. 2017) (unpublished); *see also United States v. Jones*, 565 U.S. 400, 412 (2012) ("[A] person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." (quoting *United States v. Knotts*, 460 U.S. 276, 281 (1983))).

[46] *See Jones*, 565 U.S. at 404 (holding officers violated the Fourth Amendment by attaching a GPS monitoring device to an individual's car and tracking the individual for four weeks without a warrant).

10

and follow[ed]" him for ten minutes "without cause."[47] Similarly, Mr. Barbour's allegations that Officer Banda "falsif[ied] details in a police report" and "fail[ed] to provide evidence to the court"[48] are unsupported by factual assertions—Mr. Barbour does not identify what details Officer Banda falsified or what evidence he failed to disclose.[49] These bare allegations are insufficient to state a constitutional violation.[50]

To the extent Mr. Barbour alleges Officer Banda lacked reasonable suspicion to conduct a traffic stop,[51] that claim is refuted by his allegation that Officer Banda pulled him over "for a traffic control signal violation."[52] An officer's observation of a traffic

---

[47] (Compl., Doc. No. 1 at 7); see *Stanton*, 697 F. App'x at 588–89 ("With no allegation of physical evidence, credible motive, or actual police contact, Plaintiff's claims of being surveilled and having a tracking device placed on his car do not meet the standard of plausibility required to survive 28 U.S.C. § 1915(e)(2)(B)(ii).").

[48] (*See* Compl., Doc. No. 1 at 7.)

[49] Further, Mr. Barbour cannot state a *Brady* claim for failure to disclose exculpatory evidence, where his case was dismissed before trial. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding suppression of material exculpatory evidence violates due process); *Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999) (explaining courts have "universally" concluded no *Brady* violation exists where the charges were dismissed before trial); (Compl., Doc. No. 1 at 4 (stating "[c]ase was dismissed by prosecution")).

[50] *See Iqbal*, 556 U.S. at 678.

[51] (*See* Compl., Doc. No. 1 at 7 (alleging Officer Banda tracked and followed him "without cause")); *see also United States v. Martinez*, 910 F.3d 1309, 1313 (10th Cir. 2018) (explaining a traffic stop is a "seizure" within the meaning of the Fourth Amendment and therefore must be justified by reasonable suspicion that "criminal activity may be afoot").

[52] (Compl., Doc. No. 1 at 4.)

11

violation constitutes reasonable suspicion to conduct a traffic stop.[53] Next, to the extent Mr. Barbour alleges Officer Banda lacked "[p]robable cause,"[54] it is unclear what Mr. Barbour is referencing. For instance, Mr. Barbour does not state whether he was arrested or searched, nor explain any relevant circumstances. The words "probable cause" alone (unsupported by factual allegations) do not state a constitutional violation.[55]

It is unclear whether Mr. Barbour is also asserting a malicious prosecution claim against Officer Banda.[56] A malicious prosecution claim brought under 42 U.S.C. § 1983 includes five elements: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) *no probable cause supported the arrest, confinement, or prosecution*; (4) the defendant acted maliciously; and (5) the plaintiff sustained damages."[57] Where Mr. Barbour fails to allege facts showing a lack of probable cause, Mr. Barbour fails to state a claim for malicious prosecution.

---

[53] *See Martinez*, 910 F.3d at 1313 ("[A] traffic stop is justified if the officer observes or reasonably suspects a traffic or equipment violation.").

[54] (*See* Compl., Doc. No. 1 at 3 (listing "[p]robable cause" in the section of the complaint form inviting Mr. Barbour to identify which of his federal rights were violated)); *Goad v. Town of Meeker*, 654 F. App'x 916, 923 (10th Cir. 2016) (unpublished) (explaining an arrest must be supported by probable cause).

[55] *See Iqbal*, 556 U.S. at 678.

[56] (*See* Compl., Doc. No. 1 at 3 (listing "malicious prosecution" in the section of the complaint form inviting Mr. Barbour to identify which of his federal rights were violated).)

[57] *Shrum v. Cooke*, 60 F.4th 1304, 1310 (10th Cir. 2023) (emphasis added).

Finally, as to Mr. Barbour's vague reference to "intentional misconduct,"[58] it is unclear what federal right he is invoking. Intentional misconduct is "a tort-based standard of liability,"[59] and Mr. Barbour does not explain how the concept gives rise to a cognizable federal right.[60] To the extent Mr. Barbour is attempting to bring a state-law tort claim, his allegations fail to establish federal court jurisdiction over such a claim.[61]

\* \* \*

For these reasons, Mr. Barbour's complaint is subject to dismissal.[62] Nevertheless, "[d]ismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it

---

[58] (See Compl., Doc. No. 1 at 3 (listing "intentional misconduct" in the section of the complaint form inviting Mr. Barbour to identify which of his federal rights were violated).)

[59] *Reedeker v. Salisbury*, 952 P.2d 577, 581 (Utah Ct. App. 1998).

[60] See *Watson*, 857 F.2d at 694 ("To establish a cause of action under [§] 1983, a plaintiff must allege [] deprivation of a federal right . . . .").

[61] See *Barragan v. St. Catherine Hosp.*, 339 F. Supp. 2d 1141, 1142–43 (D. Kan. 2004) ("Federal courts are courts of limited jurisdiction; they must have a statutory basis for their jurisdiction. . . . First, under 28 U.S.C. § 1332, federal district courts have original jurisdiction of civil actions where complete diversity of citizenship and an amount in excess of $75,000 in controversy exist. Second, under 28 U.S.C. § 1331, federal district courts have original jurisdiction of all civil actions arising under [federal law]." (internal quotation marks and citations omitted)). Where Mr. Barbour fails to state a claim under federal law and fails to establish diversity jurisdiction, the court lacks jurisdiction over his state law claim. See *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

[62] See 28 U.S.C. § 1915(e)(2)(B)(ii).

would be futile to give him an opportunity to amend."[63] Accordingly, Mr. Barbour will be given an opportunity to amend his complaint.

## CONCLUSION

1. Mr. Barbour may file an amended complaint by July 2, 2025. The words "Amended Complaint" should appear in the caption of the document.

2. Mr. Barbour is advised that an amended complaint will completely replace all prior versions of the complaint. Claims which are not realleged in the amended complaint will be deemed abandoned.[64]

3. Once filed, the court will screen the amended complaint under 28 U.S.C. § 1915(e) and Rule 3-2(b) of the Local Rules of Civil Practice.[65]

4. Other than an amended complaint, the restriction on filing other documents set forth in the court's March 6, 2025 order[66] remains in place.

---

[63] *Kay*, 500 F.3d at 1217 (citation omitted).

[64] *See Pierce v. Williams*, No. CIV 20-284, 2020 U.S. Dist. LEXIS 185074, at *6 (E.D. Okla. Oct. 6, 2020) (unpublished) ("An amended complaint completely replaces the original complaint and renders the original complaint of no legal effect." (citing *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991))).

[65] *See* DUCivR 3-2(b), available at https://www.utd.uscourts.gov/sites/utd/files/Civil%20Rules%20Final%202024.pdf [https://perma.cc/CSX4-8M5T].

[66] (Doc. No. 5.)

5.      Failure to file an amended complaint may result in dismissal of this action.

DATED this 11th day of June, 2025.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge
